### In re PHILADELPHIA & W. RY. CO.
### No. 9373.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 23, 1947.

Decided Nov. 4, 1947.

Thomas Reath and J. Horace Churchman, both of Philadelphia, Pa. (Drinker Biddle & Reath, of Philadelphia, Pa., on the brief), for appellant.

David F. Maxwell, of Philadelphia, Pa. (Edmonds, Obermayer & Rebmann, of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN, KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal presents a narrow point concerning the administration of an estate in corporate reorganization. Philadelphia & Western· Railway Company, the debtor, went into Bankruptcy Court under Section 77B, 11 U.S.C.A. § 207, in 1934. It will be referred to hereafter as the "old company." Philadelphia & Western Railroad Company is the old company's successor and will be referred to hereafter as the "new company".

The reorganization worked its weary way along and a plan was confirmed by the Court on June 30, 1945. On January 16, 1946 there was an order entered by the Court directing consummation of the plan. A conveyance pursuant to this order was made on July 1, 1946 and the order had required that "All property, assets, and rights of the company will be transferred to the new company."

Prior to·this conveyance a claim had been made on petition of a bondholders' committee of the·old company against certain of the directors of· the old company to account for profits from the sale of the debtor's bonds. This claim had been pursued. On August 16, 1946 a Court order approving a settlement with these directors was entered. The money paid by the former directors in accordance with the settlement is now in the treasury of the new company.

Now we get to our question. What should be done with the money thus paid in? The Reorganization Court directed that it be paid to the bondholders of the old company. The appellant here, who is the new company, says that money goes into its treasury and it will pay it out as dividends to its own shareholders. If the money had been received the day after the conveyance was made to the new company, the present question would be unimportant for the old company's bondholders become the new company's shareholders. But since that time there has been a transfer by the new company's shareholders of their shares to others in many instances. It does make a difference, then, whether this distribution is made by name to "old bondholders" or "new shareholders".

We think the Court below erred in saying that the old bondholders were to get the money. The reason why we think so may be objected to by the losing party in this appeal as technical and praised by the wining party as fundamental. We call it sufficient and let it go at that.

■ We think the claim asserted against these directors was like a claim which a shareholder asserts in a derivative suit. It is a suit brought in the name of a shareholder against corporate officers for wrongs, not to the shareholder as an individual, but to his corporation. Recovery is not for the individual shareholder ·as such. Any money recovered is paid to the corporation and benefits the other shareholders as well as the plaintiff of record in the suit. We think the same thing is true here. The claim being asserted by the bondholders was a claim on behalf of the corporation against its directors. Money recovered on that claim was a corporate asset, not that of the individuals. Arn v. Bradshaw Oil & Gas Co., 5 Cir., 1938, 93 F.2d 728.

The corporate asset, of course, was that of the old company since the wrong done was to the old company in its corporate capacity. But the old company on July 1, 1946 had deeded all its property, assets, and rights to the new company. If a farmer sells his farm, such sale would not carry with it, of course, a claim against a buyer who purchased one of his hogs or a right of action for trespass q.c.f. against a stranger who had earlier walked on the property. But where an owner conveys to another everything he owns, which certainly must be a meaning of a conveyance which purports to pass "all property, assets, and rights", we see no possibility of interpreting the conveyance to mean less than what it says. In other words, this conveyance by the old company to the new vested in the new company the old company's claim against its directors along with the ties, and the tracks, and trolley cars, and all the other things which belonged to the old company. That being so, money which comes into the treasury of the new company must be paid to people who are entitled to it. Those people, after it pays its creditors, are its shareholders. The directors of the new company will certainly be in trouble if they start paying out its money to anybody else. But that, we think, is what the order complained of in this case required them to do.

Reorganization plans may be modified, of course, and the Court in this case, as is customary, retained jurisdiction in order to see all the business through. In this case we do not have to decide how far a change of plan can go in ripping up property interests vested under a previous Court order in pursuance of the plan. Cf. In re Diversey Bldg. Corp., 7 Cir., 1944, 141 F. 2d 65. The settlement with the bondholders of the old company, pursuant to the approved plan, was a completed transaction. There is no equitable reason for reopening it.

The order appealed from is to be reversed and the case remanded for further proceedings in accordance with this opinion. We make no order concerning the distribution of this fund as dividends. The company is evidently willing to distribute it, but we do not think that such an order is within the scope of this appeal. It is a matter to be settled between the company and the Reorganization Court.

Reversed.